# Third District Court of Appeal

## State of Florida

Opinion filed November 25, 2020.
Not final until disposition of timely filed motion for rehearing.

————————

No. 3D20-1139
Lower Tribunal Nos. 19-18146, 19-18147 & 19-16592

————————

**Martin Bodden,**
Petitioner,

vs.

**The State of Florida,**
Respondent.

A Case of Original Jurisdiction – Prohibition.

Carlos J. Martinez, Public Defender, and John Eddy Morrison, Assistant Public Defender, for petitioner.

Ashley Moody, Attorney General, and Kseniya Smychkouskaya, Assistant Attorney General, for respondent.

Before FERNANDEZ, LINDSEY, and GORDO, JJ.

LINDSEY, J.

Martin Bodden petitions this Court for a writ of prohibition barring the trial court judge from presiding over any further proceedings in cases F19-18146, F19-18147, and F19-16592.[1] For the reasons set forth below, we deny the petition.

## I. BACKGROUND

This petition arises out of the trial court's alleged improper conduct during a hearing to determine Petitioner's competency to proceed to trial. The State contended Petitioner was competent. Defense counsel for Petitioner contended he was not.[2] Three physicians were presented as expert witnesses and testified as to Petitioner's competency: Dr. Brenda Rivera, Dr. Maria Galmarini, and Dr. Ralph Richardson. Dr. Rivera evaluated Petitioner and found him incompetent, Dr. Ralph Richardson evaluated Petitioner and found him incompetent, and Dr. Maria Galmarini evaluated Petitioner and found him competent. All three of these physicians accompanied their evaluations with written reports.

When Dr. Rivera was called to the witness stand, the trial court initiated its own questioning. When the court finished, counsel for the State reminded the court that she had some questions for Dr. Rivera as well. After counsel for the State and

---

[1] Petitioner has three pending cases before the judge: Case No. F19-16595, charging him with grand theft; Case No. F19-18146, charging him with robbery by sudden snatching; and Case No. F19-18147, charging him with burglary with an assault or battery.

[2] This alleged incompetence was a result of Petitioner having been diagnosed with schizophrenia.

for Petitioner questioned Dr. Rivera, the trial court asked additional questions involving a subject area into which neither party had inquired. In both instances, the court's questions were related to information included in Dr. Rivera's written report.

When Dr. Galmarini was called to the witness stand, the trial court first asked a procedural question. Following questions by the State during direct examination, the trial court asked Dr. Galmarini about Petitioner and his prescribed medications in follow-up to the responses given to the State's questions.

When Dr. Richardson was called to the witness stand, the trial court, again, initiated the questioning. As with Dr. Rivera, the trial court began with questions geared toward clarifying information included in Dr. Richardson's report. In so doing, the court determined that Dr. Richardson had based his report on statements from defense counsel and, as a result, the trial court discredited his testimony.

Following the experts' testimony, the trial court inquired of counsel for Petitioner whether she intended to call Petitioner as a witness. She responded that she did not. The court replied that it "may be helpful for the Court" and asked Petitioner if he would like to say anything. At that point, Petitioner's counsel advised the Petitioner of his Fifth Amendment privilege against self-incrimination. Petitioner then responded to the lower court's questions about Petitioner's ability to work with his counsel and about the medication he was taking.

After considering the experts' reports, relevant law, evidence adduced at the hearing, and the parties' arguments, the trial court found Petitioner competent to proceed to trial and issued a written order adjudicating Petitioner competent. Petitioner filed a Motion to Disqualify the trial court judge, which was denied. This petition followed.

## II.    JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to issue writs of prohibition. Art. V, Section 4(b)(3) Fla. Const.; Fla. R. App. P. 9.030(b)(3). A writ of prohibition is an appropriate remedy when a trial judge erroneously denies a motion for disqualification. Lynch v. State, 2 So. 3d 47, 78 (Fla. 2008) (citing Bundy v. Rudd, 366 So. 2d 440, 442 (Fla. 1978)). Whether a motion to disqualify is legally sufficient is a question of law. Gregory v. State, 118 So. 3d 770, 778 (Fla. 2013). Our review is de novo. Id.

## III.   ANALYSIS

A motion to disqualify is properly denied where the motion is legally insufficient, meaning that the motion "fails to establish a 'well-grounded fear on the part of the movant that he will not receive a fair hearing'" because of a "specifically described prejudice or bias of the judge[.]" Lynch, 2 So. 3d at 78 (first quoting Arbelaez v. State, 775 So. 2d 909, 916 (Fla. 2000); then quoting Fla. R. Jud. Admin. 2.330(d)(1)). To prevail on a petition for a writ of prohibition seeking to bar a trial

4

judge from presiding over a case requires more than mere disagreement with a ruling on a given motion. This is because an adverse ruling is not a legally sufficient ground to disqualify the trial judge. See Correll v. State, 698 So. 2d 522, 525 (Fla. 1997) ("[A]n adverse ruling is not sufficient to establish bias or prejudice."); Aquasol Condo. Ass'n, Inc. v. HSBC Bank USA, Nat'l Ass'n, 43 Fla. L. Weekly D2416 (Fla. 3d DCA Oct. 31, 2018).

The fear of judicial bias must be objectively reasonable; the "subjective fear of a party seeking the disqualification of a judge is not sufficient." Krawczuk v. State, 92 So. 3d 195, 201 (Fla. 2012) (citing Parker v. State, 3 So. 3d 974, 982 (Fla. 2009)). Consequently, "courts must review 'whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial.'" Reed v. State, 259 So. 3d 718, 721 (Fla. 2018) (quoting Barnhill v. State, 834 So. 2d 836, 843 (Fla. 2002)).

The issue for our determination is whether Petitioner's Motion to Disqualify established a reasonable, well-grounded fear that he would not receive a fair hearing based on the facts he alleges. First, Petitioner contends the court improperly initiated extensive questioning of the two expert witnesses whose opinions were aligned with Petitioner's counsel's position—that Petitioner was not competent—and then used that questioning to discredit and disregard the experts' opinions. Second, Petitioner alleges the trial court improperly called Petitioner as a witness on its own motion,

5

purportedly using Petitioner's testimony to discredit and disregard the opinions of the two experts who found Petitioner incompetent. As a result of the trial court's actions, Petitioner alleges the trial court departed from its neutral position by becoming an active participant in the litigation.[3]

We begin with the following general proposition applicable to all judicial proceedings:

> The judge must above all be neutral and his neutrality should be of the tough variety that will not bend or break under stress. He may ask questions to clarify the issues but he should not lean to the prosecution or defense lest it appear that his neutrality is departing from center.

Williams v. State, 143 So. 2d 484, 488 (Fla. 1962). In order to determine whether Petitioner's motion to disqualify established a reasonable, well-grounded fear that he would not receive a fair hearing because of the trial court's alleged described prejudice or bias, we first examine the role of the trial judge in a competency hearing, followed by the role of the defendant.

---

[3] As this Court explained in State v. Dixon, 217 So. 3d 1115, 1126 (Fla. 3d DCA 2017):

> The law in Florida is clear—a judge may not enter into the fray by giving "tips" or legal advice to either side. When a judge enters into the proceedings and becomes a participant or an advocate, a shadow is cast upon judicial neutrality.

(Citations and internal quotation marks omitted).

6

### A. The Role of the Trial Judge in a Competency Hearing

When a party raises a concern over a defendant's competence to proceed to trial, experts first consider "whether the defendant has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and whether the defendant has a rational, as well as factual, understanding of the pending proceedings." Fla. R. Crim. P. 3.211(a)(1). Trial judges are permitted to question expert witnesses in competency proceedings. See Fla. R. Crim. P. 3.212(a) ("The experts preparing the reports may be called by either party *or the court*, and additional evidence may be introduced by either party. The experts appointed by the court shall be deemed *court witnesses* whether called by the court or either party and may be examined as such by either party." (emphasis added)).

While Rule 3.212 allows only parties to introduce additional evidence, the responsibility to determine competency rests squarely on the shoulders of the trial court. See Fla. R. Crim. P. 3.212(b) ("The court shall first consider the issue of the defendant's competence to proceed. If the court finds the defendant competent to proceed, the court shall enter its order so finding and shall proceed."). Yes, trial courts can rely on expert reports submitted to the court; however, these reports are "merely advisory." McCray v. State, 71 So. 3d 848, 862 (Fla. 2011) ("The reports of experts are 'merely advisory to the [trial court], which itself retains the responsibility of the decision.'" (quoting Hunter v. State, 660 So. 2d 244, 247 (Fla.

7

1995))). Indeed, the determination of competence is a legal question, not a medical one. Dougherty v. State, 149 So. 3d 672, 678 (Fla. 2014) (citing Butler v. State, 261 So. 2d 508 (Fla. 1st DCA 1972)).

Petitioner conflates a judge's ability to participate in a competency hearing with judicial prejudice. While we agree that the better practice is for the trial court judge to allow counsel for the parties to question the witnesses first, we disagree with Petitioner's contention that the trial court "dominate[d] the calling and questioning [of] witnesses," and "was responsible for putting on much of the evidence." The transcript of the hearing suggests otherwise. Although the trial judge at times interrupted the parties' questioning of the witnesses, it was not out of bounds for the trial judge to do so in order to make the hearing move along more smoothly. For example, when counsel asked the expert to recite the report orally to memorialize it in the record, the judge interjected and suggested admitting the records into evidence and asking specific, clarifying questions about the reports instead. Other times, the judge interrupted to clarify procedural issues, like the parties' positions on Petitioner's competency and scheduling issues, and to correct otherwise incorrect statements of the law.

In Parr v. State, 247 So. 3d 550, 554 (Fla. 4th DCA 2018), a case Petitioner relies on, the Fourth District examined a case in which the trial court had strayed too far from a neutral position in a probation proceeding:

8

> A review of the transcript indicates that the court's questioning of witnesses in the present case went well beyond an attempt to clear up ambiguities. While numbers are not necessarily determinative, we cannot help but notice that the trial judge here asked the victim forty questions, while the prosecutor asked her three.

(Quoting Sears v. State, 889 So. 2d 956, 959 (Fla. 5th DCA 2004)).

Using that same quick numbers analysis here reveals that the trial judge asked approximately 13, 7, and 6 questions of each expert, while the parties asked a combined total of approximately 73, 33, 43 to each, respectively. Although, as the Petitioner notes, the trial judge's questions to the expert witnesses referenced subjects not covered by either party, all the judge's questions referred to portions of the respective expert's report or were procedural in nature. Accordingly, based on the facts as alleged and viewing them against the backdrop of the applicable law, we cannot conclude that Petitioner has established a reasonable, well-grounded fear that he would not receive a fair hearing.

## B. The Role of a Defendant in a Competency Hearing

Petitioner further alleges the trial judge's conversation with Petitioner was improper because his counsel did not intend to call him as a witness. Petitioner contends the plain language of Rule 3.212(a) precluded the court from introducing Petitioner's testimony as "additional evidence." A distinction must be drawn between a trial court "introducing additional evidence" through a defendant and providing a defendant the opportunity to be heard in a competency proceeding.

9

In that regard, there is federal authority supporting a defendant's right to testify in a competency proceeding. In United States v. Gillenwater, 717 F.3d 1070, 1079 (9th Cir. 2013), the Ninth Circuit held that a defendant in a criminal proceeding has both a constitutional and statutory[4] right to testify at a competency hearing, describing the right to testify as so "personal" that it "may be relinquished only by the defendant."

Here, Petitioner, after having been advised of his Fifth Amendment privilege against self-incrimination, engaged in a limited colloquy with the trial court judge. On these facts, we cannot conclude that Petitioner has established a well-grounded fear that he would not receive a fair hearing. See Rosier v. State, 276 So. 3d 403, 408 (Fla. 1st DCA 2019) ("The trial court then conducted a colloquy of Rosier,

---

[4] With respect to the statutory right to testify, the court in Gillenwater explained:

> Congress has explicitly provided a defendant a statutory right to testify at a pretrial competency hearing. Title 18, Chapter 313 of the United States Code sets forth procedures for determining whether a criminal defendant is competent to stand trial. . . . When the court orders a pretrial competency hearing, "the person whose mental condition is the subject of the hearing shall be represented by counsel [,] . . . *shall be afforded an opportunity to testify*, to present evidence, to subpoena witnesses . . . , and to confront and cross-examine witnesses . . . ." Thus, Congress recognized that such procedural safeguards were, at a minimum, desirable, if not constitutionally mandated.

Id. at 1076-77 (quoting 18 U.S.C. § 4247(d)) (emphasis in original). While there is no companion provision echoed in the Florida Statutes or Rules of Criminal Procedure, the federal statute suggests that providing the defendant an opportunity to testify during a competency hearing is not procedurally offensive.

during which the court learned that Rosier believed that he was doing 'a lot better,' that he was not taking any psychotropic medications, and that he believed he was okay.").

## IV. CONCLUSION

For the reasons set forth above, we deny the petition for writ of prohibition because Petitioner failed to establish that the court's actions "would create in a reasonably prudent person a well-founded fear of not receiving a fair and impartial trial." See Rodriguez v. State, 919 So. 2d 1252, 1274 (Fla. 2005).

Petition denied.